UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GLUD & MARSTRAND A/S,<br><br>        Plaintiff,<br><br>        v.<br><br>MICROSOFT CORP., et al.,<br><br>        Defendant. | CASE NO. C05-01563RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION |

This matter is now before the Court for consideration of defendant Viva Magnetics (Europe) N.V.'s ("Viva Europe") motion to dismiss for lack of personal jurisdiction. (Dkt. #65). The Court has considered the pleadings, the memoranda of the parties, and declarations submitted. For the reasons set forth below, this motion shall be granted.

## FACTUAL BACKGROUND

Plaintiff, Glud & Marstrand A/S ("G&M"), brings this action for breach of non-disclosure agreements, misappropriation of trade secrets, and a number of related causes of action. G&M claims it is the owner and developer of confidential proprietary technology relating to a metal container with a plastic insert for Digital Video Discs ("DVDs") and/or Compact Discs ("CDs"). G&M alleges that Viva Europe and other Viva entities worked together to misappropriate G&M's intellectual property and use it to bid on a project for Microsoft, which is headquartered in this District. Further, G&M alleges that Viva Europe and other Viva entities conspired to deprive G&M of a genuine opportunity to bid on the Microsoft proposal request.

G&M is a limited liability entity organized and existing under the laws of Denmark, with a principal place of business in Løsning, Denmark. G&M develops and manufactures metal packaging for

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 1

food and consumer products and decorative tins for a wide variety of other products.  While G&M was working with Microsoft on a design for the Halo2 video game case, Microsoft suggested that G&M contact a current plastic supplier to provide a plastic insert for the metal case.  Microsoft identified Viva Europe as a supplier and provided G&M with contact information for Lode Vandenbossche.  Viva Europe is a limited liability corporation organized and existing under the laws of Belgium, with a principal place of business in Antwerp, Belgium.  Thereafter, in early August 2003, G&M contacted Mr. Vandenbossche of Viva Europe.

During the next two months, Jan Bjerregaard of G&M and Lode Vandenbossche of Viva Europe exchanged information regarding the production of a plastic insert for the Halo2 case.  On August 8, 2003, G&M emailed Viva Europe a drawing of a plastic insert for the project.  In order to obtain a price quotation, Viva Europe forwarded the drawing to Viva Magnetics Ltd. Hong Kong ("Viva HK").  On August 18, 2003, Viva Europe responded to G&M's request with a price quotation for the plastic insert component.  Thereafter, G&M received a request for proposal ("RFP") from Microsoft for the Halo2 metal case.  The RFP required a response by September 4, 2003.  In order to respond to Microsoft's RFP, G&M asked Viva Europe to provide additional technical information on the plastic insert quote.  Viva Europe did not provide the information until September 11, 2003.

G&M and Viva Europe continued to work together on the project.  At G&M's request, Viva Europe sent G&M a sample of the plastic insert.  In addition, the parties scheduled a meeting for October 23, 2003, in Denmark to discuss the project in detail.  Viva Europe agreed to sign a non-disclosure agreement ("NDA") prior to the meeting.  On October 17, 2003, Viva Europe cancelled the meeting without signing the NDA and advised G&M that, after consulting with Viva HK, Viva Europe would no longer work with G&M on the project.   Viva Europe explains that it discontinued work on the project upon learning that Viva Magnetics (Canada) Ltd. ("Viva Canada") was involved in a tin box project with Microsoft.  Subsequently, the business relationship between G&M and Viva Europe ceased.

## DISCUSSION

Defendant Viva Europe argues that it has done nothing that would confer general jurisdiction by this Court because it has no ties with the State of Washington, no facilities here, and no other presence

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 2

here, even indirect. Viva Europe also argues there is no specific jurisdiction in Washington because the entire course of contact between Viva Europe and G&M took place in Europe and none of Viva Europe's alleged actions were directed at Washington. Further, Viva Europe asserts that it is a separate entity from defendants Viva HK and Viva Canada and thus contacts with Washington by these Viva entities cannot be attributed to Viva Europe to establish jurisdiction.

In opposition to the motion to dismiss, G&M does not contend that this Court has general jurisdiction over Viva Europe. Instead, G&M argues that this Court has specific jurisdiction over the dispute because Viva Europe's actions were specifically directed at Washington. G&M argues that Viva Europe's conduct was connected with G&M's project with Microsoft and hence, was aimed at Washington and caused harm here. Lastly, G&M argues that this Court has specific jurisdiction over Viva Europe because of Viva Europe's close alignment with other Viva entities that are subject to this Court's jurisdiction.

**I. Legal Standard**

In response to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction over the defendant is appropriate. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). Where, as here, the motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to avoid dismissal. *Id.* While the plaintiff may not simply rely on the bare allegations of its complaint, uncontroverted allegations in the complaint are taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor. *Id.*

**II. Specific Jurisdiction**

The question of whether personal jurisdiction exists over a nonresident defendant is governed by Washington's long-arm statute, whose reach is coextensive with the outer limits of federal due process. *See Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994). Thus, this Court need only determine whether jurisdiction comports with constitutional due process requirements. Due process requires that the nonresident defendant have certain "minimum contacts" with the forum state so that

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 3

exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction can be specific or general. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984). Specific jurisdiction arises where a cause of action results from a defendant's contacts with the forum state. *Id.* at n.8.

The Ninth Circuit applies a three-prong test to determine if specific jurisdiction exists:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The burden is on the plaintiff to satisfy the first two prongs. *Id.* If the plaintiff meets this burden, then the burden shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.*

A. Purposeful Availment or Direction

Under the first prong of the test, jurisdictional analysis for contract claims requires "purposeful availment" while analysis for tort claims requires "purposeful direction." *Id.* at 802–03. Personal jurisdiction must exist for each claim asserted against a defendant. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Because G&M's allegations include contract and tort claims, this Court must apply both analyses to determine whether G&M satisfies the first prong.

1. Contract Claims

G&M argues that Viva Europe's contacts satisfy the first prong of the test for specific jurisdiction over its contract claims for two reasons. First, G&M argues that since Microsoft suggested that G&M "partner" with Viva Europe, the subsequent agreement between G&M and Viva Europe was the direct result of conduct by a company located in the forum. Second, G&M argues that "purposeful availment" is satisfied because Viva Europe made an agreement with G&M whose known purpose was to advance a project for Microsoft.

For contract claims, the relevant inquiry focuses on whether a defendant "purposefully availed

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 4

itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In return for these benefits and protections, a defendant must submit to the burdens of litigation in that forum. *Id.* Typically, evidence of consummating a transaction in the forum, such as delivering goods or executing a contract, constitutes "purposeful availment." *Id.* at 803. The purposeful availment test is satisfied if the defendant has engaged in deliberate action within the forum or created continuing obligations to forum residents. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Only the defendant's own conduct can establish minimum contacts with the forum, not the actions of a third party or the plaintiff. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) (the plaintiff's act of bringing the defendant's product into the forum state does not confer personal jurisdiction over defendant); *Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

G&M's first argument is unconvincing and does not show that Viva Europe did anything to avail itself of jurisdiction in Washington. The fact that a third party located in the forum suggested that G&M contact Viva Europe provides no evidence that Viva Europe itself engaged in any deliberate action within the forum or created any obligations to forum residents. Viva Europe's only alleged specific contact with Washington arises from G&M's speculation that "[t]here is no doubt that Microsoft communicated with Viva Europe in conjunction with its advice that G&M should contact Viva Europe." Opposition pp. 6–7. However, Viva Europe directly controverts this allegation and states that "Viva Europe and Microsoft never communicated in conjunction with the alleged advice that G&M should contact Viva Europe." Supp. Vandenbossche Declaration ¶ 8. Thus, the uncontroverted allegations only show that G&M's contact with Viva Europe came at the suggestion of a forum-based company and not that Viva Europe itself made any relevant contacts with Washington.

G&M's second argument suggests that the mere contemplation of placing a good into the "stream of commerce" is sufficient to confer jurisdiction. This argument is without support. Viva Europe never consummated the transaction and did not supply the plastic insert to be incorporated into the Halo2 case for Microsoft. Instead, Viva Europe merely provided specifications, samples, and price quotations for

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 5

the possible production of a plastic insert for G&M, located in Denmark. Negotiations toward a possible future business relationship with a company in Denmark hardly constitute evidence that Viva Europe purposefully availed itself of the privilege of conducting activities within Washington, thereby invoking the benefits and protections of its laws.

Moreover, G&M cites *Byron Nelson Co. v. Orchard Mgmt. Corp.* in support of its proposition that Viva Europe's actions satisfy "purposeful availment" under a contract claim analysis. 975 P.2d 555 (Wash. Ct. App. 1999). In *Byron Nelson*, the nonresident defendant initiated contact via telephone, requested brokerage services, and contracted with the plaintiff, a Washington corporation. *Id.* at 557. The court found purposeful availment sufficient for Washington jurisdiction because the defendant "solicit[ed] and engag[ed] a Washington broker." *Id.* at 558. Here, in contrast, there is no evidence that Viva Europe ever contacted, let alone solicited or engaged, anyone in Washington.

Even accepting G&M's uncontroverted allegations as true, G&M has not demonstrated that Viva Europe invoked the benefits and protections of Washington laws such that it must submit to the burdens of litigation in this State. Consequently, G&M has failed to present sufficient evidence to meet its burden of demonstrating that this Court may exercise jurisdiction over Viva Europe based on G&M's contract claims.

Nevertheless, under the doctrine of pendent personal jurisdiction, a court may exercise jurisdiction over a "claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp.*, 368 F.3d at 1180; *see also CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004) (finding a tort claim may serve as a basis for the exercise of pendent personal jurisdiction over a contract claim).

2. Tort Claims

For tort claims, purposeful direction typically consists of the defendant's "actions outside the forum state that are directed at the forum." *Schwarzenegger*, 374 F.3d at 803. The Ninth Circuit applies a three-part "effects" test to determine whether purposeful direction has occurred. *Id.* The "effects" test requires that "the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 6

forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

(i) Intentional Act

G&M specifically alleges that Viva Europe misused G&M's proprietary information, misled G&M into believing that Viva Europe would partner with G&M on the project, and fraudulently promised to supply information. G&M's Mr. Bjerregaard states that Mr. Vandenbossche told him that Viva Europe understood the confidential nature of the project and would treat G&M's information as confidential. G&M alleges that Viva Europe disregarded this assurance and disclosed G&M's proprietary information to other Viva entities, namely Viva HK.

G&M clears the first hurdle for purposeful direction because its pleadings sufficiently allege that Viva Europe committed an intentional act. Intentional acts giving rise to specific jurisdiction for tort liability need not occur within Washington in order to confer jurisdiction. *See Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1198 (9th Cir. 1988). For purposes of a motion to dismiss for lack of personal jurisdiction, conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F3d. 1082, 1087 (9th Cir. 2000). Thus, accepting G&M's testimony, G&M has specifically alleged that Viva Europe committed an intentional act by disclosing G&M's proprietary information after agreeing to keep it confidential.

(ii) Express Aiming at Forum State

G&M alleges that Viva Europe's conduct satisfies the express aiming requirement because the purpose of Viva Europe's conduct was to cause Microsoft to choose a Viva entity instead of G&M to develop and sell the Halo2 case. G&M further alleges that "Viva entities conspired with Microsoft to misappropriate and misuse G&M's proprietary information" and that "Viva Europe acted in conjunction with agents of Microsoft." Opposition p. 8.

In the Ninth Circuit, the express aiming requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters,* 223 F3d. at 1087. In *Bancroft & Masters*, the court found "express aiming" at California where the defendant sent a letter to Virginia with the alleged intent and result of disrupting the plaintiff's California business. *See id.* at 1087–1088. G&M relies on *Sinatra v.*

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 7

*National Enquirer* in support of its claim that Viva Europe expressly aimed its conduct at Washington. 854 F.2d 1191. In *Sinatra*, a Swiss clinic made false statements about Frank Sinatra, the famous singer, to *National Enquirer* reporters during interviews conducted in Switzerland in return for the publicity it would receive by being featured in the resulting article. *Id.* at 1192. The court found it could exercise specific jurisdiction over the Swiss clinic because the false statements were "expressly calculated to cause injury in California." *Id.* at 1198. The court explained that "California is the situs of Sinatra's injury" since Sinatra is a California resident, he conducts his business from California, he licenses his name in California, and the center of his business is in California. *See id.* at 1195–97.

G&M does not clear the second hurdle for purposeful direction because its pleadings do not present evidence supporting its allegation that Viva Europe's acts were "expressly aimed" at Washington. Unlike the plaintiffs in *Bancroft & Masters* and *Sinatra*, G&M is not a forum resident. Instead, G&M is incorporated and has its principal place of business in Denmark. Hence, Viva Europe's alleged interference with G&M's prospective economic relationship with Microsoft is better described as being aimed at and causing injury to G&M in Denmark. In addition, G&M offers no evidence, other than pure conjecture, that Viva Europe conspired with or otherwise had contacts with Microsoft. In fact, Viva Europe directly rebuts any contacts with Microsoft. Mr. Vandenbossche states, "to the best of my knowledge, Viva Europe and Microsoft have had no communications or contacts of any kind." Supp. Vandenbossche Declaration ¶ 8. G&M's evidence, at best, shows that Viva Europe's actions had a collateral aim and impact in Washington where G&M was attempting to secure a contract with Microsoft. Because G&M is not a resident of Washington, this indirect relationship is too attenuated to qualify as "expressly aimed" at Washington. Thus, G&M has failed to present sufficient evidence to satisfy the express aiming requirement and justify the exercise of jurisdiction over Viva Europe.

(iii) Causing Harm in the Forum State

G&M alleges that Viva Europe's tortious acts have caused harm in Washington because Viva Europe injured G&M by interfering with its prospective economic relationship with Microsoft. Further, G&M claims that Viva HK's statement on its website that Viva was first to develop the metal DVD box technology is a disparagement and depreciation of G&M's name that caused harm in Washington.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 8

The third requirement of the "effects" test is that the defendant's alleged actions caused "harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Recently, the Ninth Circuit clarified that the "'brunt' of the harm need not be suffered in the forum state." *Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antismitisme,* 433 F.3d 1199, 1207 (2006) (en banc). Instead, only a "jurisdictionally sufficient amount of harm" need be suffered in the forum. *Id.* The Ninth Circuit has explained that a corporation suffers economic harm "where the bad acts occurred; where most of (or at least a threshold fraction of) the corporation's shareholders are located; where the corporation has its principal place of business; or where the corporation is incorporated." *Dole Food*, 303 F.3d at 1113.

Here, G&M has failed to present facts to show that Viva Europe's alleged acts caused sufficient harm to G&M in Washington. Viva Europe's alleged bad acts were performed from Belgium where Viva Europe is incorporated and has its principal place of business. Moreover, Vandenbossche states that Viva Europe does not have contacts with anyone in Washington nor does it transact business, sell any product, or advertise within the State. Vandenbossche Declaration ¶¶ 7 & 8. The harm from Viva Europe's alleged interference with G&M's prospective relationship with Microsoft, would likely be suffered in Denmark where G&M is incorporated and has its principal place of business. G&M fails to present any evidence that it conducts business in Washington that could be adversely affected by Viva Europe's actions. The only evidence offered in support of G&M's contention that it has suffered harm in Washington is that the Viva Group's website states Viva was the first to develop the metal DVD box technology. This argument is tenuous at best and fails to show that Viva Europe itself made the statements or that such statements caused the depreciation of G&M's name in Washington. Therefore, in addition to G&M's failure to show "express aiming," G&M has also failed to make a prima facie showing that Viva Europe's conduct caused G&M harm in Washington.

B. Arises Out Of

The Ninth Circuit applies a "but for" test to determine whether a claim arises out of a defendant's forum-related activities. *Ballard*, 65 F.3d at 1500. A claim will not confer specific jurisdiction if the plaintiff's claim would have arisen regardless of the defendant's contacts with the forum. *Id.* G&M

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 9

alleges that had Viva Europe disclosed the fact that it was a competitor, G&M would not have supplied its proprietary information to Viva Europe.  However, the allegations of misconduct by G&M do not point to any contacts with Washington that would make such claims arise "but for" Viva Europe's forum-related activities.  The only evidence of Viva Europe's relationship with Washington arises from Viva Europe's knowledge that its negotiations with G&M over the possible production of a plastic insert would ultimately be incorporated into a DVD case for Microsoft.  This knowledge does not demonstrate that Viva Europe's alleged wrongdoing arises from any contact with Washington.  Rather, G&M's claims against Viva Europe arose from the course of dealing between the two companies that occurred entirely in Europe.  Consequently, G&M's claims are not sufficiently related to any Viva Europe contacts with Washington to satisfy the "but for" test.

C. Reasonableness

If the plaintiff establishes a prima facie case of jurisdiction under the first two prongs for specific jurisdiction, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802.  The reasonableness determination requires the consideration of seven factors: (1) the extent of the defendant's purposeful injection into the forum state's affairs, (2) the burden on the defendant in defending in the forum, (3) the extent of conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  *Dole Food*, 303 F.3d at 1114.

1. Purposeful Injection

This factor is analogous to the purposeful direction analysis discussed above.  Thus, this factor weighs in favor of Viva Europe and against jurisdiction because the extent of Viva Europe's purposeful injection into Washington is tenuous at best.

2. Burden on Viva Europe

"The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 10

over national borders." *Asahi Metal Ind. v. Superior Court*, 480 U.S. 102, 114 (1987).  Undoubtedly it would be more burdensome for Viva Europe to litigate in Washington than in Belgium.  Nevertheless, with advances in transportation and communication, this burden is substantially lessened.  Thus, this factor weighs slightly in favor of Viva Europe.

### 3. Conflict with the Sovereignty of Viva Europe's State

"Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra*, 854 F.2d at 1199.  Viva Europe is organized under the laws of Belgium and has its principal place of business there.  Belgium has at least some interest in regulating Viva Europe's behavior.  Therefore, this factor slightly favors Viva Europe and weighs against the exercise of jurisdiction.

### 4. Washington's Interest

Washington has a strong interest in providing a forum for its residents and citizens who are tortiously injured.  *See Sinatra*, 854 F.2d at 1199.  However, since G&M is not a Washington resident, Washington's legitimate interests in the dispute have considerably diminished.  *See Asahi*, 480 U.S. at 114.  Further, any economic injury sustained by G&M was primarily felt in Denmark and the alleged misconduct by Viva Europe occurred entirely in Europe during the course of dealing between the two companies.  Thus, this factor weighs in favor of Viva Europe and against the exercise of jurisdiction.

### 5. Efficient Resolution

The location of the evidence and witnesses is an important consideration in determining which forum can most effectively resolve a dispute.  *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995).  G&M's alleges that Viva Europe's misconduct included communications with Microsoft and other Viva entities in Canada and Hong Kong.  However, evidence of such communications should be accessible through Viva Europe in Belgium.  In addition, since the alleged misconduct occurred during the course of dealing between G&M and Viva Europe, the witnesses and evidence are primarily located in Denmark and Belgium.  Thus, this factor slightly favors Viva Europe.

### 6. Convenience to G&M

If Washington is not a proper forum, then G&M would likely have to litigate this suit against Viva

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 11

Europe in Denmark or Belgium, neither of which is an obvious inconvenience to G&M. However, G&M's claims against Viva Europe involve a common nucleus of operative facts with its claims against Microsoft, Viva HK, and Viva Canada. Without jurisdiction over Viva Europe in Washington, G&M would be forced to litigate separate suits in two different countries. Nevertheless, the Ninth Circuit has noted that this factor is "not of paramount importance." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (2003). Since it would be inconvenient for G&M to litigate separate suits, this factor weighs slightly in favor of G&M and the exercise of jurisdiction over Viva Europe.

7. Alternative Forum

Belgium is an obvious alternative forum. G&M has offered no reasons why Belgian or even Danish courts could not provide effective redress for its dispute with Viva Europe. Since there is clearly an available alterative forum, this factor favors Viva Europe.

8. Balancing the Reasonableness Factors

Six out of the seven reasonableness factors weigh in favor of Viva Europe and against the exercise of jurisdiction. Even if this Court were to find that G&M had minimum contacts with Washington that satisfy the first two prongs for specific jurisdiction, Viva Europe may have a "compelling case" that the exercise of jurisdiction would be unreasonable. While it may be more convenient for G&M to litigate its suit against all defendants together, the balance of the reasonableness factors weighs heavily against the exercise of jurisdiction over Viva Europe.

D. Jurisdiction via Parent-Subsidiary Relationship

G&M argues that even if this Court were to find that Viva Europe does not have minimum contacts with Washington, this Court should nevertheless exercise jurisdiction because of "the extremely close relationship between Viva Europe and Viva Canada and Viva HK." Opposition p. 10. G&M advances a merger theory, discussed in *MGM v. Grockster,* for imputing Viva Canada and Viva HK's forum-related contacts to Viva Europe for jurisdictional purposes. 243 F. Supp. 2d 1073 (C.D. Cal. 2003). Under this theory, "two entities are so closely aligned that it is reasonable for the parent to anticipate being haled into court in the forum because of its relationship with its subsidiary." *Id.* at 1099 (*quoting In re Telectronics Pacing Sys., Inc.,* 953 F. Supp. 909, 919 (S.D. Ohio 1997). Some factors

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 12

that might indicate a sufficient relationship with the subsidiary to justify jurisdiction include: overlap in board of directors and officers, interchange of personnel between the parent and the corporation, exchange of documents and records between parent and subsidiary, listing subsidiary as a branch, agency, or division of the parent, or indicating that subsidiary and parent are part of the same entity. *Id.* at 1099–1100. G&M argues that these factors are met in this case.

At the outset, G&M's reliance on *MGM* misses an important distinguishing factor: the merger theory involves imputing a *subsidiary's forum-contacts* to the absent parent corporation, not the other way around. The concept behind the merger theory is that "the absent parent and the in-forum subsidiary are in fact a single legal entity." *In re Telectronics*, 909 F. Supp. at 921. Thus, if the parent corporation exercises *de facto* control over the subsidiary, then the subsidiary's contacts are properly attributable to the parent. *See id.* G&M's argument, on the other hand, attempts to impute Viva HK's forum contacts as the parent corporation to Viva Europe as an absent subsidiary because "Viva Europe worked closely with and took its marching orders from Viva HK." Opposition p. 11. G&M's argument essentially attempts to reverse the flow of merger theory so that a parent's forum contacts can be attributable to its subsidiary.

Notwithstanding this difference, the case at bar satisfies many of the merger theory factors that the *MGM* court found indicative of a close relationship sufficient for jurisdiction. In *MGM*, the court reasoned that "extensive overlap of the corporate operation and perception . . . shows a tremendous degree of 'merger' between the two companies." 243 F. Supp. 2d at 1100. Here, Viva Europe concedes overlap in board directors and shareholders between it and Viva Canada. Viva Europe does not deny G&M's speculation that Viva Europe also has directors and shareholders in common with Viva HK. There is also evidence that Viva Europe and Viva HK frequently exchanged information regarding the production of the plastic insert for G&M. For instance, Viva Europe forwarded G&M's drawing of the DVD case to Viva HK in order to prepare G&M's price quote. Viva Europe also informed G&M that it was discontinuing the project after "consulting" with Viva HK. Moreover, despite Viva Europe's contention that it is nowhere identified as a branch, section, department or division of Viva Canada or Viva HK, the Viva Group website lists Viva Europe as a "regional sales office." Thus, this case meets

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 13

1  many of the factors indicative of a "merger" between two companies.

2  However, the facts that drove the *MGM* court's reasoning and resulting conclusion are distinguishable from the instant case. In *MGM*, the court found jurisdiction over Sharman Network, Ltd. ("Sharman") based on its minimum contacts with the forum. 243 F. Supp. 2d at 1088. Jurisdiction was also found over LEF Interactive Pty., Ltd. ("LEF") even though its conduct did not directly satisfy the minimum contacts requirement on the basis that LEF controlled the conduct of Sharman and was established solely for the purpose of doing so. *See id.* at 1100. The court reasoned that Sharman's in-forum activities were "predominantly instigated or maintained by employees of LEF," and concluded that LEF's actions through and with Sharman satisfied the due process requirements for jurisdiction. *Id.* Here, there is no evidence that Viva Europe controlled the activities of either Viva Canada or Viva HK such that forum contacts by these "controlled" entities could be attributed to Viva Europe for jurisdictional purposes. Alternatively, even if Viva HK exercised control over Viva Europe, as G&M alleges, there is no evidence that such control resulted in minimum contacts with Washington. Thus, G&M's evidence does not present a prima facie showing that jurisdiction over Viva Europe is proper because of its relationship with Viva HK and Viva Canada.

E. Jurisdictional Discovery

In the alternative, G&M requests that this Court permit jurisdictional discovery to further explore the relationship between the Viva entities and the contacts between Viva Europe and the forum.

A district court is vested with broad discretion to permit or deny discovery, and a decision "to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan*, 287 F.3d 1193, 1212 (9th Cir. 2002). Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed. *Martel v. County of Los Angeles*, 56 F.3d 993, 995 (9th Cir. 1995) (en banc). "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (citation omitted).

The evidence offered by G&M does not present a "reasonable probability" that further discovery

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 14

would establish jurisdiction over Viva Europe.  To satisfy the "express aiming" requirement, G&M would need to discover a relationship between Viva Europe and Microsoft connected with the Halo2 project that shows Viva Europe's conduct was purposefully directed at Washington.  Further, G&M would need to discover evidence that Viva Europe's conduct caused some tangible harm to G&M in Washington.  Lastly, G&M would have to show that haling Viva Europe into court in Washington would not offend traditional notions of fair play and substantial justice.  Given the evidence presented by G&M, it is unlikely that discovery would yield sufficient evidence to establish the above three deficiencies.  Perhaps G&M's strongest argument for jurisdictional discovery is its request to explore the relationship among the Viva entities to determine whether Viva HK and Viva Canada's contacts may serve as a basis for jurisdiction over Viva Europe.  However, because this argument involves an alteration to the merger theory and because the theory has yet to be adopted by the Ninth Circuit,[1] G&M has not demonstrated a likelihood of success on this claim.

## CONCLUSION

For the reasons set forth above, the Court concludes that it does not have personal jurisdiction over Viva Europe.  Accordingly, Viva Europe's Rule 12(b)(2) motion to dismiss is GRANTED.  The Clerk shall enter judgment accordingly.

DATED this  15   day of August 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[1] In *Doe v. Unocal Corp.*, the Ninth Circuit stated that "[w]hile the Court follows the alter ego and agency tests as articulated by the Ninth Circuit, the Court notes the useful discussion of alter ego as merger and agency as attribution in *In re Telectronics Pacing Systems, Inc.*" 248 F.3d 915, 926 n.2 (2001).  More recently in *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, the Ninth Circuit applied the alter ego and agency tests (without discussion of merger theory) to determine if jurisdiction could be established in the parent-subsidiary corporation context. 328 F.3d 1122, 1134–35 (2003).  Therefore, unlike the recent district court's decision in *MGM*, the Ninth Circuit has thus far declined the opportunity to adopt the merger theory from *In re Telectronics*.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
JURISDICTION - 15